IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-00977-WYD-KLM

JONATHAN D. MARTIN,

    Plaintiff,

v.

NORTH METRO FIRE RESCUE DISTRICT, a Colorado non-profit corporation and Special District; and
DIVISION CHIEF JOSEPH BRUCE, in his individual capacity,

    Defendants.

## ORDER

I.    INTRODUCTION

THIS MATTER comes before the Court on Defendants North Metro Fire Rescue District ("NMFRD") and Division Chief Joseph Bruce's Motion to Dismiss Plaintiff's First, Second, and Third Claims (docket #5), filed July 6, 2007. For the reasons stated below, Defendants' motion to dismiss is denied.

II.    BACKGROUND

Plaintiff Jonathan D. Martin seeks relief under 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment based on both his probationary status as a firefighter and based on his gender. Plaintiff also brings a Colorado claim for negligent supervision against Defendant Joseph Bruce. Plaintiff filed a response to Defendants' motion to dismiss, and Defendants filed a reply brief in support of their motion to dismiss. It

should be noted that after seeking leave of the Court, the Plaintiff filed a surreply to address arguments raised in Defendants' reply.

By way of background, in April of 2004, the Plaintiff applied for a position as a firefighter with the NMFRD. (Compl. ¶ 8.) On or about April 20, 2004, NMFRD offered Plaintiff a firefighter position to commence on June 1, 2004. (Compl. ¶ 9.) Plaintiff alleges that he notified NMFRD, through Division Chief Joseph Bruce and other supervisory personnel, that he had a "National Registry" certification for emergency medical technicians, but did not have Colorado certification. (Compl. ¶ 10.) On June 1, 2004, Plaintiff entered NMFRD's fire academy. (Compl. ¶ 13.) After successfully completing the NMFRD fire academy in October of 2004, Plaintiff was assigned to various fire stations in both Northglenn, Colorado and Broomfield, Colorado. (Compl. ¶ 14.) In January of 2005, Plaintiff received a fully successful performance review from NMFRD. (Compl. ¶ 15.)

During the first week of training, Plaintiff and the other probationary firefighters "were told that they would be treated 'like shit' for a year, and if they complained, the treatment would worsen; and that anyone can take anything for a year." (Compl. ¶ 17.) Plaintiff alleges that from October 2004 until January 2005, a supervisory employee routinely referred to Plaintiff in front of others as "fuck-face," "ass-face," "dumb-fuck," and "shit-for-brains." (Compl. ¶ 19.) In the spring of 2005, the Plaintiff further alleges that a co-worker struck him on the buttocks "with a large ceramic plate so hard that he almost dropped to his knees in pain . . . ." (Compl. ¶ 24.) Also in the spring of 2005, Plaintiff alleges that a co-worker "who was standing on a chair just outside the door

with his pants down, with his hands on his buttocks, spreading them apart, with the intent that Plaintiff would run into them." (Compl. ¶ 25.) Plaintiff also alleges that while he was studying in his room, "a co-worker snuck into his room, with his pants pulled down and touched Plaintiff on his face with his penis and scrotum." (Compl. ¶ 27.) Plaintiff alleges that the division lieutenant had observed this type of lewd behavior in the past. (Compl. ¶ 28.) Plaintiff further states that the harassment of female employees did not include this type of sexual harassment. (Compl. ¶ 36.)

Plaintiff alleges that he made complaints to both his union representative and to the station lieutenant regarding these incidents. (Compl. ¶ 31-32.) The station lieutenant informed the Plaintiff that pursuant to protocol, Plaintiff must report this conduct to the "Chiefs." (Compl. ¶ 32.) At a meeting on April 13, 2005, Plaintiff's station lieutenant informed the Plaintiff that "it is part of the history or culture of the District to engage in the hazing of probationary employees." (Compl. ¶ 34.) After this meeting, Plaintiff alleges that his co-workers "stopped talking to him, except when essential for work purposes." (Compl. ¶ 37.)

Plaintiff alleges that Defendant Bruce "became aware of Plaintiff's harassment allegations . . . by the April 13 meeting." (Compl. ¶ 38.) Defendant Bruce placed Plaintiff on administrative leave on May 10, 2005, stating that he had just been informed by a Battalion Chief that Plaintiff had not received his Colorado EMT certification. (Compl. ¶ 39.) On May 12, 2005, Plaintiff met with Defendant Bruce, and Bruce told the Plaintiff that "he should resign, because if he did not, he would make it impossible for plaintiff to find another firefighter job in Colorado." (Compl. ¶ 41.)

Plaintiff finally alleges that he resigned under duress on May 16, 2005. (Compl. ¶ 42.)

## III. STANDARD OF REVIEW

In ruling on a Motion to Dismiss pursuant to 12(b)(6), the standard used to be that the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). Thus, until recently, a dismissal was only warranted where "it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *The Ridge at Red Hawk, L.L.C. v.Schneider*, 2007 WL 1969681 at *3 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"However, the Supreme Court recently decided that 'this observation has earned its retirement,' and it has prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)). "The Court explained that a plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1974). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.*

IV. ANALYSIS

    A. Equal Protection Claims for Disparate Treatment and Sexual Harassment

Plaintiff's first claim for relief alleges a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment for disparate treatment based on his status as a probationary employee. The Defendants have moved to dismiss this claim arguing that Plaintiff failed to allege both that he was treated differently that those similarly situated to him and that any alleged hazing or harassment occurred under color of state law pursuant to 42 U.S.C. § 1983.

Plaintiff's second claim for relief also alleges a violation of the Equal Protection Clause based on his gender. The Defendants have moved to dismiss this claim arguing again that Plaintiff's factual allegations failed to establish any alleged hazing and harassment occurred under color of state law pursuant to 42 U.S.C. § 1983.

        1. Disparate Treatment

Under the Equal Protection Clause of the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Supreme Court has further recognized equal protection claims brought by a "class of one, where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In the case at hand, the Plaintiff's allegations regarding disparate treatment of the class of probationary firefighters as compared to the class of non-probationary

firefighters does not implicate either a suspect class or a fundamental right. Thus, these classes as alleged by the Plaintiff fall under the category of a "class-of-one" equal protection claim. *See Olech*, 528 U.S. at 564. In order for the Plaintiff to succeed on this type of equal protection claim in the context of a motion to dismiss, he must allege sufficient facts to state an equal protection claim for relief that is plausible on its face. Specifically, Plaintiff must allege that he was "singled out for persecution due to some animosity, meaning that the actions of [Defendants] were a spiteful effort to get [Plaintiff] for reasons wholly unrelated to any legitimate state activity." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848-49 (10th Cir. 2005) (internal quotations omitted). Plaintiff must further provide compelling evidence that he was treated differently from others who were similarly situated." *Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006).

After reviewing the allegations set forth in the complaint in the light most favorable to the Plaintiff, I find that Defendants' motion to dismiss the equal protection claim should be denied. In his Complaint, Plaintiff alleges that NMFRD treats probationary firefighters differently than non-probationary firefighters. Specifically, paragraphs 17, 33, and 34 of the Complaint read as follows:

> 17. At the end of training the probationary firefighters were told that they would be treated 'like shit' for a year, and if they complained, the treatment would worsen; and that anyone can take anything for a year.
> . . .
> 33. Plaintiff was told that it is a part of the history, or culture of the District to engage in the hazing of probationary employees.

> 34. Plaintiff had observed a regular practice of frequent harassment of probationary employees since he started work at NMFRD.

(Compl. ¶¶ 17, 33-34.) Based on both the allegations and the law set forth above, I find that Plaintiff's Complaint contains enough facts to state a claim for relief under the Equal Protection Clause for disparate treatment that is plausible on its face. Thus, Defendants' motion to dismiss this claim is denied.

### 2. Sexual Harassment

Defendant NMFRD seeks to dismiss this claim arguing that "§ 1983 cannot be used to assert the violation of rights created only by Title VII." (Def.s' Mot. at 7.) Plaintiff, on the other hand, states that his claim is based on the equal protection clause, not on a right created by Title VII. Based on the controlling authority set forth below, I agree and reject Defendants' argument. In *Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989), the Tenth Circuit recognized a claim for sexual harassment under the equal protection clause. The *Starrett* Court unequivocally held that "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws." *Id.* at 814. Further, the Tenth Circuit has stated that "[d]espite earlier cases suggesting that Title VII was an exclusive remedy . . . later cases distinguished suits brought in which a distinct right, separate from those rights created by Title VII, is the basis for a separate constitutional challenge." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) (citations omitted). In this case, Plaintiff, in his Complaint, alleges his equal protection rights were violated and requests remedies for those alleged violations under 42 U.S.C. § 1983. Thus, Plaintiff has alleged an independent basis for his §

1983 claim. Further, no where in the Complaint, does Plaintiff assert a claim under Title VII. Accordingly, Defendants' motion to dismiss this claim is denied.

### 3. 42 U.S.C. § 1983

Defendants also seek to dismiss Plaintiff's equal protection claims asserting that Plaintiff failed to establish any alleged hazing and harassment occurred under color of state law as required under 42 U.S.C. § 1983. "'[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy was the moving force behind the violation.'" *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1236 (10th Cir. 2000) (quotation omitted). The Supreme Court in *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), made it clear that in addition to the imposition of liability on a municipality pursuant to an official policy or custom, as found in *Monell*, a municipality can also be liable for a single unlawful decision by one of its officials so long as that official "possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481; *see also Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir. 1993).

The Tenth Circuit has further stated that 42 U.S.C. § 1983 creates a cause of action against individuals who violate federal law while acting 'under color of state law.'" *David v. City and County of Denver*, 101 F.3d 1344, 1353, (10th Cir. 1997). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by a virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* In

connection with Plaintiff's sexual harassment claim, the Tenth Circuit has held that "in order to establish the state action necessary to support a § 1983 [Fourteenth Amendment sexual harassment claim], [the defendant] had to be plaintiff's supervisor or in some other way exercise state authority over [him]." *Id.* at 1354.

In the case at hand, I must determine whether Plaintiff can prove enough facts that would plausibly establish that NMFRD employees acted under color of law when they allegedly engaged in disparate treatment and sexual harassment in violation of the Plaintiff's rights guaranteed under the Equal Protection Clause of the United States Constitution. Plaintiff alleges that the actions taken against him were pursuant to a "regular practice," "history," or "culture" of the District to engage in the hazing of probationary employees. (Compl. ¶¶ 34-35.) Plaintiff also alleges that the Chiefs, including Defendant Bruce, were aware of the culture of hazing and harassment, and that the District allowed a "regular practice of frequent harassment on probationary employees . . . ." (Compl. ¶¶ 31-35.) Additionally, with respect to Plaintiff's claim for sexual harassment, Plaintiff alleges that the harassment of female employees did not include a sexual component and that a station officer and lieutenant observed and participated in the harassment. (Compl. ¶¶ 24-26.) Accepting all of the well-pleaded allegations of the Complaint as true and construing them in the light most favorable to the Plaintiff, I find that Plaintiff has established plausible claims against NMFRD for violations of his Constitutional rights. Accordingly, Defendants' Motion to Dismiss Plaintiff's equal protection claims is denied.

B. Negligent Supervision Claim Asserted Against Defendant Bruce

Defendant Bruce seeks dismissal of Plaintiff's claim for negligent supervision arguing that it is barred by the Colorado Governmental Immunity Act ("CGIA"). Specifically, Defendant Bruce asserts that Plaintiff failed to allege facts sufficient to support a finding that Defendant Bruce's conduct was willful and wanton as required by the CGIA. "A public employee is immune from all claims that lie or could lie in tort, unless the claim falls within one of the six limited areas for which immunity has been waived or unless the act or omission causing the injury was willful and wanton." *Moody v. Ungerer*, 885 P.2d 200, 204 (Colo. 1991) (citing § 24-10-118(2)).

Plaintiff counters that the CGIA does not bar his claim for negligent supervision because the facts, as alleged, support a showing that Defendant Bruce's actions were willful and wanton. Although the CGIA does not define the term "willful and wanton," the court in *Moody* looked to the definition of "willful and wanton" for purposes of exemplary damages ("conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff") and the definition of "willful and wanton" used in the automobile guest statute (as "wholly disregardful of the rights, feeling and safety of others . . . at times even imply[ing] an element of evil"). *Id.* at 205.

Section 24-10-110(5)(a) provides that in actions "in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." "Failure to plead the factual

basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." Colo. Rev. Stat. § 24-10-110(5)(b). "Whether a plaintiff has pleaded sufficient facts to state a claim based upon willful and wanton conduct is to be determined by the court." *Barham v. Scalia*, 928 P.2d 1381, 1385 (Colo. App. 1996). "However, when there are disputed issues of fact, a well pleaded claim that an employee acted willfully and wantonly must await determination at trial on the merits." *Id.*

I find that in his Complaint, Plaintiff has alleged sufficient facts on the part of Defendant Bruce that, if accepted as true, adequately and plausibly assert willful and wanton misconduct. As stated above, while a probationary firefighter at the NMFRD, Plaintiff alleges threats of violence, physical assault, harassment and humiliation, and then "ostracism and eventual forced departure from his position." (Pl.'s Resp. at 12.) In his Complaint, Plaintiff states that the NMFRD management was complicit in these incidents. (Pl.'s Resp. at 12.) Plaintiff further alleges that Defendant Bruce "was at all times pertinent hereto the Operations Chief of NMFRD, and as such, responsible for supervision of Plaintiff's supervisors and co-workers" (Compl. ¶ 60); Defendant Bruce knew of "Plaintiff's harassment allegations at least by the April 13 meeting" (Compl. ¶ 38); and that "NMFRD management and policy makers allowed, condoned and were deliberately indifferent to, the harassment and hazing of probationary employees, including Plaintiff." (Compl. ¶ 45). I find that these alleged facts support a plausible showing that Defendant Bruce acted wholly disregarding the rights, feeling, and safety

of the Plaintiff.  Accordingly, Defendants' motion to dismiss the negligent supervision claim is denied.

V. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants North Metro Fire Rescue District ("NMFRD") and Division Chief Joseph Bruce's Motion to Dismiss Plaintiff's First, Second, and Third Claims (docket #5), filed July 6, 2007, is **DENIED.**

Dated:  December 13, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge